UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JEFFERY JOHNSON                                                                                    PLAINTIFF

v.                                                                          CIVIL ACTION NO. 3:22-CV-P483-JHM

CAPTAIN GONZALAS *et al.*                                                                      DEFENDANTS

**MEMORANDUM OPINON AND ORDER**

This is a *pro se* 42 U.S.C. § 1983 prisoner civil-rights action. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A. For the reasons set forth below, the Court will dismiss some claims and allow others to proceed.

**I.**

Plaintiff Jeffery Johnson was formerly incarcerated as a convicted prisoner at Kentucky State Reformatory (KSR).[1] Plaintiff lists the following KSR officials as Defendants in the complaint – Warden Valentine; Captain Gonzalas; Major Travis St. Clair; Lt. Dana Penninger; UA Thompson; and UA Carmin (collectively, the "KSR Defendants"). He also lists Wellpath/CCS ("Wellpath") and Wellpath officials HSA John Brinker and "Nurse Shawn" as Defendants (collectively, the "Wellpath Defendants"). Plaintiff additionally names "John + Jane Doe KSR + DOC [Department of Corrections] Officials" as Defendants. Plaintiff sues Defendants in both their official and individual capacities.

Plaintiff makes the following allegations in the complaint:

> In the beginning of the June 2022, I was locked into the Mental Health Observation Unit . . . with approx. 35 COVID-19 positive people. . . . I became sick after weeks of NOT being separated from these [prisoners]. On 6-14-22 the air-conditioning went out. . . . I was locked in dorm [] sick with no air conditioning with temperatures soaring near 100 [degrees] outside. On 6-16-22 after 2 days sick in unbearable conditions with no air I had a mental health crisis caused by the

---

[1] The record reflects that Plaintiff is now incarcerated Calloway County Jail.

"Commonwealth + Wellpath CCS John + Jane Does" including Defendant Brinker that knew or should know that you can NOT Abuse + Torture Mentally Ill Disabled People in these barbarous conditions. On 6-16-22 . . . when my mental health crisis OCCURRED I was refused medical treatment (mental healthcare) by Captain Gonzalas who took my medical prescribed walker . . . my medical prescribed glasses + medical prescribed hearing aids . . . and instead of giving me mental healthcare I so desperately needed . . . . [The taking of] my medical/prescribed disability devices caus[ed] the deprivation of life's necessities sleep, being able to SEE, being able to understand, and ability for a week with no shower in EXTREME Pain, Headaches, EARS ringing. I made multiple requests for ADA Coordinator Cyndi Walker to come and help me . . . . I was released from segregation + the isolating conditions of the (Torture Chamber) and in retaliation by Major Travis St. Clair, who is Defendant in 1 of the 9 other federal cases (I have filed) . . . instead of being put back in dorm 7 where I lived in the Mental Health Observation Unit approx. 6 years . . . I was put in a dorm with stairs to enter the building on a walker and forced to climb stairs in EXTREME pain to get into or out of the building. I tried to explain about the stairs to Major St. Clair he knows I'm on a walker + permanently bottom bunk restricted I told him I can't climb the stairs Major St. Clair said and I quote I don't f--king care you can climb these stairs or I will throw your ass back in segregation.

In a separate section of the complaint, Plaintiff alleges that he is being subjected to "double bunking" even though he is disabled.

Based upon these allegations, Plaintiff asserts that Captain Gonzalas, Major St. Clair, and Wellpath HSA John Brinker violated his rights under the American with Disabilities Act (ADA) and Rehabilitation Act (RA). He alleges that these Defendants were deliberately indifferent to his serious medical needs under the Eighth Amendment. Finally, he states that Major St. Clair's alleged retaliatory actions violated his rights under the First Amendment. Plaintiff additionally claims that these allegations show that these Defendants have "inflicted unessory + wanton + emotional distress" upon him.

Plaintiff next alleges that on July 26, 2022, "I was in fact assaulted in the shower by inmate Chris Ewing." Plaintiff further alleges that on August 4, 2022, "Ewing threatened to stab and kill me I reported it on 'J-Pay' and nothing was done" and that on August 5, 2022, Ewing threatened to "choke and rape me." Plaintiff alleges that this occurred because he was moved from the Mental

2

Health Observation Unit to a regular dorm. Plaintiff further states that all incidents on "J-Pay" are reported to the Warden and all KSR officials, yet "no action was taken to abate the situation." Plaintiff asserts that this establishes an Eighth Amendment failure-to-protect claim.

Plaintiff alleges that Lt. Penninger "singnied [Ewing] to push me over the edge multiple times" and that UA Thompson "has taken no action to abate the situation and is in charge of the dorm." Plaintiff alleges that these actions were retaliatory and were taken because these Defendants are also defendants in other federal lawsuits filed by Plaintiff.

In the final section of the complaint, Plaintiff alleges that he has been on COVID lockdown for weeks and refused a COVID Test and Temperature Check for weeks even though he is experiencing painful headaches and a mental health crisis. Based upon these allegations, he asserts that "Nurse Shawn" has violated his rights under the Eighth Amendment.

Plaintiff also alleges that he is being denied access to the courts under the First Amendment because he is "being denied grievance process copys" and because KSR/DOC officials have refused to sign an application for leave to proceed without prepayment of fees and denied him access to prison trust account statement.

As relief, Plaintiff seeks damages and injunctive relief.

## II.

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997),

*overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. *See Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). The Court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.

### A. Injunctive Relief

In the "Relief" section of the complaint form, Plaintiff seeks injunctive relief that prohibits KSR officials from taking his "disability devices" and from housing him "in dorms with stairs and forcing him to climb them." Because the record reflects that Plaintiff has been transferred out of

KSR, any claim for injunctive relief is moot. *See Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998) (holding that a prisoner's claims for injunctive relief became moot after he was transferred to another facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (same). Thus, Plaintiff's claims for injunctive relief will be dismissed for failure to state a claim upon which relief may be granted.

### B. ADA/RA

Plaintiff asserts that Defendants Gonzalas, Brinker, and St. Clair violated his rights under the Americans with Disabilities Act (ADA) and the Rehabilitation Act of 1973 (RA). Plaintiff's claims against these Defendants in their individual capacities fail because "neither the ADA nor the RA impose liability upon individuals." *Lee v. Michigan Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004); *Williams v. McLemore*, 247 F. App'x 1, 8 (6th Cir. 2007) ("Title II of the ADA does not provide for a cause of action against government officials sued in their individual capacities."). Therefore, Plaintiff's ADA and RA claims against these Defendants in their individual capacities will be dismissed for failure to state a claim.

Upon review, <u>the Court will allow Plaintiff's claims under Title II of the ADA and under the RA to proceed against Defendants Gonzalas, Brinker, and St. Clair in their official capacities</u>.

### C. 42 U.SC. § 1983

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting

5

under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991)

### 1. Official-Capacity Claims

#### a. KSR Defendants

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). When state officials are sued in their official capacities for monetary damages, they are not "persons" subject to suit within the meaning of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (concluding that a state, its agencies, and its officials sued in their official capacities for monetary damages are not considered persons for the purpose of a § 1983 claim). State officials sued in their official capacities for damages are also absolutely immune from § 1983 liability under the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. at 169 ("Th[e] Eleventh Amendment bar remains in effect when State officials are sued for damages in their official capacity.").

For these reasons, Plaintiff's official-capacity claims against the KSR Defendants will be dismissed for failure to state a claim upon which relief may be granted and for seeking monetary damages from Defendants who are immune from such relief.

#### b. Wellpath Defendants

For purposes of this review, the Court will assume that Wellpath is the private entity contracted by the State of Kentucky to provide medical services to inmates at KSR. As explained above, Plaintiff's official-capacity claims against the individual Wellpath Defendants are actually against their employer, Defendant Wellpath. The same analysis that applies to a § 1983 claim

against a municipality applies to a § 1983 claim against a privately contract entity such as Wellpath. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) ("*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well."). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a policy or custom and an alleged constitutional deprivation. *Monell,* 436 U.S. at 691. Thus, liability of a contracted private entity also must be based on a policy or custom of the entity. *Street v. Corr. Corp. of Am.*, 102 F.3d at 818; *see also Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001). To state a claim against a contracted entity, a plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability" of the entity under § 1983. *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

In the instant case, Plaintiff does not allege that he was denied medical treatment pursuant to a policy or custom of Wellpath. Accordingly, Plaintiff's § 1983 claims against Wellpath and his official-capacity claims against Wellpath Defendants John Brinker and "Nurse Shawn" must be dismissed for failure to state a claim upon which relief may be granted.

## 2. Individual-Capacity Claims

### a. First Amendment

#### i. Retaliation

The Court next turns to Plaintiff's retaliation claim. To set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

With regard to the third prong, "retaliation 'rarely can be supported with direct evidence of intent.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). Thus, a plaintiff may rely on circumstantial evidence, but he must still provide "specific, nonconclusory allegations" linking his conduct to a defendant's retaliatory act. *Spencer v. City of Catlettsburg*, 506 F. App'x 392, 396 (6th Cir. 2012). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). A plaintiff may allege a chronology of events from which a defendant's retaliatory animus could reasonably be inferred. *Manning v. Bolden*, 25 F. App'x 269, 272 (6th Cir. 2001) (citations omitted). However, courts are "reluctant to find retaliatory motive from temporal proximity alone when that proximity is not 'extremely close.'" *Briggs v. Westcomb*, 801 F. App'x 956, 960-61 (6th Cir. 2020) (citing *Holzemer v. City of Memphis*, 621 F.3d 512, 526 (6th Cir. 2010)). Other evidence courts examine

to determine retaliatory motive include statements by defendants or the disparate treatment of other prisoners in the same circumstances. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010); *see also Patterson v. Godward*, 370 F. App'x 608, 610 (6th Cir. 2010).

Upon consideration of Plaintiff's allegations, the Court will allow a First Amendment retaliation claim to proceed against Defendant St. Clair in his individual capacity.

The Court, however, will dismiss Plaintiff's retaliation claims against Defendants Penninger and Thompson for failure to state a claim upon which relief may be granted. Plaintiff's one-sentence allegations against each these two Defendants are conclusory and provide no factual basis to support a retaliatory motive. "[B]ecause prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (internal quotation marks omitted).

The Court will additionally dismiss Plaintiff's retaliation claim based upon his allegation that he was placed on a "grievance restriction" for filing federal actions against some of the Defendants. The "Sixth Circuit has repeatedly held that placement on modified access [to filing grievances] does not constitute an adverse action for purposes of a retaliation claim." *Weatherspoon v. Williams*, No. 2:14-cv-108, 2015 U.S. Dist. LEXIS 59081, at *12 (W.D. Mich. May 6, 2015) (citing *Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005*)*; *Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir. 2001)). This is because the right to file institutional grievances without being subject to retaliation extends only to the filing of nonfrivolous grievances and "an ordinary person of reasonable firmness would not be deterred from filing non-frivolous grievances merely because he or she had been placed on modified status." *Walker*, 128 F. App'x at 446.

9

### ii. Denial of Access to the Courts

Plaintiff also maintains that he was denied access to the courts. Prisoners have a constitutional right under the First Amendment to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). To state a claim for a denial of access to the courts, a prisoner must demonstrate actual prejudice to pending litigation that challenges his conviction or conditions of confinement. *Lewis v. Casey*, 518 U.S. 343, 355 (1996). That is, there must be an actual injury, and no actual injury occurs without a showing that such a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented." *Id*. at 356; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (stating that an inmate must show, "for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim").

Plaintiff alleges no actual any injury to any past or pending litigation. In fact, Plaintiff has filed approximately fifteen lawsuits in this Court within the last two years and has filed numerous motions in these actions. Therefore, Plaintiff's First Amendment access-to-courts claim will be dismissed for failure to state a claim.

### b. Eighth Amendment

Upon review of Plaintiff's allegations, <u>the Court will allow Eighth Amendment claims to proceed against Defendants Gonzalas, St. Clair, Brinker, and "Nurse Shawn," as well the "John + Jane Doe KSR + DOC" Defendants, in their individual capacities</u>.

Plaintiff also asserts an Eighth Amendment failure-to-protect claim against Warden Valentine. This claim is based upon Plaintiff's allegation that he reported an assault and threats of assault by another inmate on "J-pay" but "no action was taken to abate the situation." Plaintiff's claim against Warden Valentine fails because it is an attempt to hold her liable based her

supervisory role as KSR's Warden. The doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). Thus, because the complaint contains no allegations that Warden Valentine was actively involved in the alleged violation of Plaintiff's constitutional rights, any individual-capacity claim against her must be dismissed for failure to state a claim upon which relief may be granted.

### D. Ex Post Facto Clause

Plaintiff also alleges violation of the Ex Post Facto Clause. "The Constitution's two Ex Post Facto Clauses prohibit the Federal Government and the States from enacting laws with certain retroactive effects." *Stogner v. California*, 539 U.S. 607, 610 (2003) (citing Art. I, § 9, cl. 3 (Federal Government); Art. I, § 10, cl. 1 (States)). "[A]ny statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto." *Collins v. Youngblood*, 497 U.S. 37, 42 (1990) (citing *Beazell v. Ohio*, 269 U.S. 167 (1925)).

Plaintiff identifies no law he claims to have violated the Ex Post Facto Clause or how any of the Defendants would be responsible for the enactment of such a law. Accordingly, Plaintiff's claim under the Ex Post Facto Clause must be dismissed for failure to state a claim upon which relief may be granted.

11

### E. State-Law Claims

Plaintiff alleges the intentional infliction of emotional distress by Defendants Gonzalas, St. Clair, Brinker, which is a state-law claim. Because they are state employees, any state-law claim against Defendant Gonzalas or St. Clair in their official capacities is barred by sovereign immunity. *See Yanero v. Davis*, 65 S.W.3d 510, 519 (Ky. 2001); *Com. v. Harris*, 59 S.W.3d 896, 899 (Ky. 2001). Thus, these claims must be dismissed for seeking monetary relief from Defendants who are immune from such relief.

Upon review, however, the Court will allow this claim to proceed against Defendants Gonzalas and St. Clair in their individual capacities and against Defendant Brinker in both his official and individual capacities.

### F. Defendant Carmin

Upon review of the lengthy and partially illegible handwritten complaint, the Court can find no allegations against Defendant Carmin. The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the claim against the defendant is subject to dismissal, even under the liberal construction afforded to *pro s*e complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (affirming dismissal of the plaintiff's claims for failure to state a claim upon which relief may be granted where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Chapman v. City of Detroit*, 808 F.2d 459, 465

(6th Cir. 1986) ("It is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings."). Thus, because the Court can find no allegations against Defendant Carmin in the complaint, the Court will dismiss Plaintiff's claims against her for failure to state a claim upon which relief may be granted.

## IV.

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's 42 U.S.C. § 1983 official-capacity claims against Defendants Valentine, Gonzalas, St. Clair, Penninger, Thompson, and Carmin and his official-capacity state-law claims against Defendants Gonzales and St. Clair are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted and pursuant to 28 U.S.C. § 1915A(b)(2) for seeking monetary relief from a defendant who is immune from such relief.

**IT IS FURTHER ORDERED** that Plaintiff's claim for injunctive relief; individual-capacity claims against Defendants Gonzalas, Brinker, and St. Clair under the ADA and RA; § 1983 claims against Defendant Wellpath and official-capacity claims against Defendants Brinker and "Nurse Shawn"; Eighth Amendment individual-capacity claim against Warden Valentine; First Amendment individual-capacity retaliation claims against Penninger and Thompson; claims based upon grievance restrictions, denial-of-access to the courts, and the Ex Post Facto Clause; and any claim against Defendant Carmin are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

Because no claims remain against them, the **Clerk of Court** is **DIRECTED** to **terminate Defendants Valentine, Penninger, Thompson, Wellpath/CCS, and Carmin as parties to this action**.

      The Court will enter a separate Service and Scheduling Order to govern the claims it has allowed to proceed.  In allowing these claims to proceed, the Court passes no judgment upon their merit or upon the ultimate outcome of this action.

Date: May 25, 2023

*[signature]*

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:     Plaintiff, *pro se*
        Defendants Gonzalas, St. Clair, Brinker, and "Nurse Shawn"
        General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4414.011